**SIGNED THIS: October 27, 2022**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **DOUGLAS ERNEST JIVIDEN and** | )   Case No.   17-90605 |
| **CATHY SUE JIVIDEN,** | ) |
| | ) |
| Debtors. | ) |

## OPINION

This Chapter 13 case is before the Court on the motion to modify the confirmed plan or to dismiss the case filed by the Chapter 13 Trustee, Marsha Combs-Skinner, seeking modification of the confirmed plan to include a priority tax claim filed by the Internal Revenue Service more than four years after confirmation of the plan, and on the Debtors' objection to that claim.

## FACTUAL BACKGROUND

The Debtors have filed three bankruptcy petitions, all under chapter 13 of the Bankruptcy Code. The first petition was filed by the Debtors on July 6, 2006 (Case No. 06-90664, the "First Case").  The IRS filed Claim #8-2 on November 14, 2006, for priority taxes of $5,166.21, for 2004 and 2005.  The plan was confirmed on December 13, 2006 and the IRS's priority claim was paid in full by the Trustee.  The plan payments were completed by September 1, 2011, but the first case wasn't closed until December 13, 2011, without the Debtors receiving a discharge due to their failure to file Certifications of Domestic Support Obligation.

The second petition was filed by the Debtors on January 30, 2012 (Case No. 12-90108, the "Second Case"), forty-eight days after the closure of the First Case. The IRS filed Claim #6-3, asserting a priority claim in the amount of $11,259.35, for taxes for years 2008 through 2011, and a general unsecured claim for interest of $304.39 for 2005, and the same amount of $304.39 as interest for 2007. The plan was confirmed on August 16, 2012 and the IRS's priority claim amount was paid in full through the plan thereby satisfying the assessed income taxes and prepetition interest for 2008, 2009, 2010 and 2011. The Debtors received a discharge on May 23, 2017 and the case was closed on June 28, 2017.

On May 30, 2017, seven days after issuance of the discharge in the Second Case, the Debtors filed their third Chapter 13 petition, which remains pending before this Court (Case No. 17-90605, the "Third Case").  When the Debtors' plan was confirmed on Sept. 27, 2017 the IRS had not filed a claim and the plan provided for no payment to the IRS.  Although the original schedules indicated that there were no priority claimants, the Debtors filed amended schedules on December 6, 2017, reflecting that the IRS held a priority claim in an "unknown" amount.  On that date, the Debtors filed Claim 2-1 on behalf of the IRS in the amount of $1.00. The IRS filed Claim 3-1 on Dec. 11, 2017, asserting priority status under §507(a)(8) in the amount of

2

$2,577.23 for a tax due of $535 plus prepetition interest for 2007, and for interest-only amounts for 2005, 2008, 2009, and 2010. Initially, no action was taken to address the priority claim of the IRS that was not provided for in the confirmed plan.

It was not until Sept. 13, 2021, nearing the end of the plan, that the Trustee filed a motion to modify the plan or to dismiss the case, based on the Debtors' failure to modify the plan to provide for the IRS priority claim or to object to that claim. The Debtors filed an objection to Claim 3-1 on November 22, 2021. Several amended claims were filed by the IRS early in 2022, with the last one, Claim 3-4, filed on May 3, 2022, asserting a priority amount totaling $931 for interest accrued on taxes due for 2008, 2009 and 2010. That claim also asserts non-priority unsecured debts totaling $1,479.82 that includes $734.50 for interest on 2005 taxes and $535 of tax due for 2007 plus interest thereon of $210.32. Numerous hearings have been held and briefs have been submitted by the parties.

## **ANALYSIS**

The Debtors challenge the propriety of the IRS's continued accrual of interest on tax debts that were allowed as priority claims and fully paid through the Debtors' prior Chapter 13 plan and were discharged in the Second Case. The Debtors request that the priority amounts claimed for tax years 2008, 2009 and 2010 in Claim 3-4, totaling $931.00, be disallowed as having been paid in full and/or discharged in the Second Case. The IRS does not dispute that the assessed tax amounts for tax years 2008, 2009 and 2010, plus the interest that accrued on those assessments up to the filing date of the Second Case were paid in full through the confirmed plan in the Second Case. The priority amounts attributable to tax years 2008, 2009 and 2010 asserted in Claim 3-4 filed in the Third Case consist entirely of interest that accrued after the filing of the Second Case.

The effect of §502(b)(2), which excludes unmatured interest from being allowed as part of a creditor's claim for an unsecured debt, means that debtors are not permitted in a Chapter 13 case to pay post-petition interest on any unsecured debt even if the debt is not dischargeable. An exception to that restriction is provided in §1322(b)(10) in cases where all allowed claims are to be paid in full and the debtor has sufficient disposable income available to pay the additional interest. The Debtors were unable to take advantage of §1322(b)(10) in any of their three Chapter 13 cases.

The IRS takes the position that if a tax debt is not dischargeable in a particular bankruptcy case, the taxing body may continue to accrue post-petition interest which may then be collected after the automatic stay terminates or the bankruptcy case is concluded or dismissed. The IRS also contends that in a bankruptcy case where the debtor was a debtor in one or more prior bankruptcy cases, the Court should apply the doctrine of equitable tolling to the time periods referred to in the Bankruptcy Code that define when income tax debts are not dischargeable --- specifically §507(a)(8)(A) as incorporated into §523(a)(1).

The Debtors received a discharge under §1328(a) in the Second Case. To the extent the parties are asking this Court to determine the dischargeability under §523(a)(1) of the Debtors' liabilities for taxes assessed for years 2008, 2009 and 2010 and the interest that accrued on those tax debts after the filing of the Second Case, the Court notes that no adversary proceeding has been filed seeking such a determination. Since an adversary proceeding is required to determine the dischargeability of a debt, Fed. R. Bankr. Pro. 7001(6), that issue is not properly before the Court. In this Court's view, however, it is not necessary to address the question of dischargeability in order to resolve the issue of the priority status of Claim 3-4, which will resolve the Trustee's motion and allow the Third Case to be discharged and closed.

The rule in the Seventh Circuit is that to the extent taxes owed by the debtor are excepted from discharge under §523(a)(1), prepetition interest that accrues on such tax debts is also not dischargeable. *In re Larson,* 862 F.2d 112, 119 (7th Cir. 1988). The interest that accrues on a tax debt after a bankruptcy case is filed, where that debt is excepted from discharge for purposes of that case, may or may not be dischargeable in a subsequent bankruptcy case. Pursuant to §523(b), discharge determinations in one case that hinge on the look-back periods set forth in §§523(a)(1) and 507(a)(8) are not binding in a later case. Those look-back periods must be applied anew based upon the petition date of a subsequently filed bankruptcy case. *In re McCoy,* 2020 WL 718266, *12 (Bankr. S.D. Miss.); *In re Saler,* 205 B.R. 737, 749 (Bankr. E.D. Pa. 1997); *In re Szafranski,* 147 B.R. 976, 988 (Bankr. N.D. Okla. 1992).

A similar principle applies to the issue of priority status under §507 in the context of serial bankruptcy filings. Priority status is determined in each case by applying the statutory look-back periods using that case's petition date. A priority determination in a prior case has no binding effect in a later case. The applicable look-back periods are to be applied anew in each case subject only to the statutory suspension provisions contained in §507(a)(8). Where a taxing body files a priority claim for "interest only" because the assessed tax amount itself has been paid in a prior bankruptcy case, the priority status of the interest is based upon the due date of the return or the date the tax was assessed. 11 U.S.C. §507(a)(8)(A)(i) and (ii). If those dates precede the applicable look-back periods, the interest is not entitled to priority status notwithstanding that the interest continued to accrue during the look-back periods.

Generally, if an assessed income tax is excepted from discharge, the IRS may continue to accrue post-petition interest on such taxes from and after the petition date, subject to proper credit for interim payments from the bankruptcy trustee or from the debtor, and with interest

5

continuing to accrue only on the remaining principal balance. *Johnson v. Internal Revenue Service,* 146 F.3d 252, 260-61 (5th Cir. 1998). The Debtors express uncertainty about the method by which the IRS calculated the interest claimed on Claim 3-4, pointing out that the IRS filed several amended claims with differing amounts. In light of this Court's determination herein denying the priority status asserted by the IRS, it is not necessary to address the correctness of the IRS's interest accrual methodology used to calculate the amounts claimed in Claim 3-4.

The primary issue before the Court is whether the IRS has correctly asserted the priority status of the amounts included in Claim 3-4. This issue turns on the application of §507(a)(8)(A) and the hanging paragraph appended to that section as part of the 2005 amendments to the Bankruptcy Code. Under §507(a)(8)(A), priority status is accorded to certain unpaid income taxes if (1) the return was due less than three years before bankruptcy, (2) the date the taxes were assessed is within 240 days before bankruptcy, or (3) the taxes were still assessable at the time of the bankruptcy filing. *Hosack v. IRS,* 282 Fed. Appx. 309, 315 (5th Cir. 2008). In material part, the hanging paragraph provides that the time periods specified in subsection (a)(8) of §507 shall be "suspended" for any time during which the stay of proceedings was in effect in a prior bankruptcy case or during which collection was precluded under a confirmed plan, plus 90 days.

The time periods for determining priority status are look-back periods that do not run forward in time from a particular occurrence as statutes of limitations do. Instead, the applicable number of years or days is counted backwards in time from the petition date. When the hanging paragraph states that the "applicable time period specified in this paragraph *shall be suspended"* during certain periods, it plainly means "shall not be counted." The statutory look-back periods are subject to an adjustment that extends the periods to a date that reaches farther back in time. So, for example, if a prior bankruptcy case was filed one year before the current case and was

dismissed after thirty days, that thirty-day period during which the automatic stay was in effect plus 90 days for a total suspension period of 120 days, would be excluded from the backwards counting process, thereby extending the length of the look-back period by 120 days. Accordingly, the terminal point of the adjusted look-back period of §507(a)(8)(A)(i) would be the date preceding the current case's filing date by three years and 120 days. Taxes payable, and interest thereon, under returns last due within the *adjusted* look-back period would be accorded priority status, while taxes and interest under any returns with an earlier due date (i.e., more than three years and 120 days before the bankruptcy case was filed) would be non-priority.

In order to resolve the claim objection now before the Court, it is necessary to determine whether or not the pendency of the Second Case, Case No. 12-90108, results in a period of suspension adjustment to the statutory look-back periods as applied in the Third Case. In the Third Case, IRS Claim 3-4 asserts a total priority amount of $931.00 for income tax liabilities for the years 2008, 2009 and 2010. If that claim is allowed as a priority status claim and is not paid through the plan or otherwise satisfied, the Third Case is subject to dismissal without discharge for violating 11 U.S.C. §1322(a)(2), which is the basis for the Trustee's motion to modify the confirmed plan or to dismiss the case. However, if the amounts claimed as priority are, in fact, not entitled to priority status, there is no cause to modify the plan or to dismiss the case and the Debtors would be entitled to a discharge.

Section 507(a)(8)(A)(i) establishes a three-year look-back period for determining priority status, for an income tax for which a return is due, including extensions, after three years before the date of the filing of the petition. Section 507(a)(8)(A)(ii) establishes a 240-day look-back period applicable to the date of assessment and includes a provision for excluding any time when the automatic stay in a prior case was in effect during the 240-day period and, if so, adding an

7

additional 90 days of excluded time. The hanging paragraph provides that if a prior bankruptcy case filed by the same debtor was pending during the three-year look-back period, the running of time is suspended for periods during which the automatic stay was in effect or during which collection was precluded by a confirmed plan and, if so, an additional 90 days of suspended time is applied. The additional 90 days of excluded or suspended time provided for in §507(a)(8)(A)(ii)(II) and in the hanging paragraph are not cumulative, even with multiple prior cases, as only a single 90-day period may be added. *In re Montgomery,* 446 B.R. 475, 483 (Bankr. D. Kan. 2011).

    For the tax years at issue, 2008, 2009 and 2010, the IRS Claim 3-4 states that the income taxes were assessed in 2011 and 2012, with the latest assessment date being March 12, 2012. Thus, the taxes were assessed long before the beginning of the 240-day look-back period in §507(a)(8)(A)(ii), based on a filing date for the Third Case of May 30, 2017. For purposes of §507(a)(8)(A)(i), the date the returns were last due was well before the beginning of the three-year look-back period, which began on May 30, 2014. As the Debtors' Second Case was pending during the 240-day and three-year look-back periods applicable in the Third Case, however, it is necessary to evaluate and ascertain the period during which the automatic stay prevented the IRS from collecting the post-petition interest that accrued since the filing of the Second Case and/or whether collection was precluded by the Chapter 13 plan confirmed in the Second Case. See *In re Jones,* 657 F.3d 921, 925-26 (9th Cir. 2011).

    In general terms when a bankruptcy case is filed, under §362(a) creditors are stayed from taking action to collect a pre-petition debt and assets that become property of the estate are protected from all creditor enforcement actions so long as the assets remain property of the estate. Section 362(a) does not stay collection activities by post-petition creditors against

8

property of the debtor, including property that became part of the bankruptcy estate when a Chapter 13 petition was filed but revested in the debtor upon confirmation of a plan. *Id.* at 927.

Section 1327(b) provides that confirmation of a Chapter 13 plan vests all of the property of the estate in the debtor unless the plan or confirmation order provides otherwise. 11 U.S.C. §1327(b). The confirmed plan in the Second Case expressly provides that property of the estate vests in the Debtors upon confirmation (Case No. 12-90108, Doc. 52, §V). Confirmation occurred on August 16, 2012 (Case No. 12-90108, Doc. 63). The post-confirmation estate would have included that portion of the Debtors' income necessary to fulfill the terms of the plan, but no other income. *Matter of Heath,* 115 F.3d 521, 524 (7th Cir. 1997). The confirmation order provides that the Debtors' post-confirmation plan payments were to be $970 per month (Case No. 12-90108, Doc. 52), with the IRS to be paid in full its allowed priority claim of $11,259.35, which included interest to the petition date. Neither the confirmed plan nor the confirmation order addressed in any way the accrual, payment or collection of post-petition interest on the IRS's priority claim.

After confirmation of a Chapter 13 plan and the vesting of the estate property in the Debtors, post-petition debts are collectible from the non-estate property of the Debtors. See *In re Kolve,* 459 B.R. 376 (Bankr. W.D. Wisc. 2011). While the IRS may continue to accrue post-petition interest on tax debts, that post-petition interest is unmatured interest for purposes of claims allowance and is expressly excluded from being part of an allowed claim in a bankruptcy case. 11 U.S.C. §502(b)(2). The taxpayer's liability for post-petition interest arises post-petition, meaning collection of it during a Chapter 13 case is stayed during the time period between filing and confirmation, but not after confirmation where property of the estate revests in the debtor. *Id.* at 384.

Applying these principles and assuming for purposes of this discussion the nondischargeability of the assessed tax debts in the Second Case as asserted by the IRS, the period of suspension under §507(a)(8) would only include the time during which the IRS was stayed from collecting the interest that accrued after the filing of the Second Case, which was the period from the petition date, January 30, 2012, through the date of confirmation, August 16, 2012, plus 90 days as provided in the hanging paragraph appended to §507(a)(8). The date 90 days after August 16, 2012 is November 14, 2012 which thus is the terminal date of the suspension period resulting from the pendency of the Second Case.

The hanging paragraph of §507(a)(8) requires a comparison of the "otherwise applicable" look-back periods with the terminal date of the suspension period resulting from the earlier case. If the terminal date of the suspension period is prior to the commencement date of a look-back period, there is no basis to adjust the statutory look-back period by extending it farther back in time. That is the case here. The commencement date of the three-year look-back period of §507(a)(8)(A)(i) is May 30, 2014, which is preceded by the terminal date of the suspension period, November 14, 2012. Likewise, the commencement date of the 240-day look-back period of §507(a)(8)(A)(ii) is October 2, 2016, which is also preceded by the terminal date of the suspension period. Accordingly, no adjustment to the otherwise applicable look-back periods is warranted. It follows that the IRS's claim that priority status should be accorded the interest amounts that make up Claim 3-4 is contrary to the plain meaning of §507(a)(8) and must be denied.

Since no determination is made that the tax and interest amounts set forth in Claim 3-4 were discharged in or as a consequence of the Second Case, those sums should be treated as non-

priority unsecured debts for the purpose of concluding the administration of the Third Case. Thus, the IRS will have an allowed non-priority unsecured claim of $2,410.82.

## **CONCLUSION**

For the reasons stated above, it is determined that the $931.00 amount asserted by the IRS in Claim 3-4 as entitled to priority under 11 U.S.C. §507(a)(8) is not entitled to priority status and is properly classified as a non-priority general unsecured claim. The Debtors' objection to that claim filed by the IRS should be allowed to that extent. The Trustee's motion to modify the plan or to dismiss the case without a discharge should be denied. The payments under the confirmed plan in the Third Plan having been completed, the Court determines that the Debtors are entitled to a discharge. All other requests made by the Debtors or the IRS for adjudication of other issues should be denied, without prejudice.

This Opinion constitutes this Court's findings of fact and conclusions of law made pursuant to the Federal Rules of Bankruptcy Procedure. A separate order shall be entered.

#    #    #